**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| State Farm Fire and Casualty Company, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> First Financial of Charleston, Inc. and Otha ) <br> Delaney, individually and on behalf of all ) <br> others similarly situated, ) <br> ) <br> Defendants. ) | **Civil Action No.: 2:23-cv-263-RMG** <br><br> **ANSWER AND COUNTERCLAIM** |

TO:   JENNIFER E. JOHNSON, ESQUIRE AND NATALIE ECKER, ESQUIRE, ATTORNEYS FOR PLAINTIFF:

Defendant Otha Delaney ("Delaney"), through the undersigned attorneys, answers Plaintiff State Farm Fire and Casualty Company's ("State Farm's") complaint and counterclaims against State Farm:[1]

**Answer**

**Parties, Jurisdiction, and Venue**

1. Admitted.

2. Admitted.

3. Admitted.

4. Admitted.

5. Admitted.

6. Admitted.

7. Admitted.

---

[1] Capitalized words have the meaning given them in the Complaint (Doc. # 1) unless given a different meaning here.

8.  Admitted.

**Facts**

9.  Delaney admits State Farm issued a business policy of insurance to First Financial of Charleston, Inc. ("First Financial") bearing policy number 99-CV-4371-3, for the policy period January 9, 2008 to January 9, 2009. Delaney admits the Policy was renewed annually through January 9, 2022. Delaney is without knowledge sufficient to admit or deny the truth or falsity of the remaining allegations in this Paragraph, so they are denied.

10.  Admitted.

11.  Admitted.

12.  Admitted.

13.  Delaney is without knowledge sufficient to admit or deny the truth or falsity of the allegations in this Paragraph, so they are denied.

14.  Delaney is without knowledge sufficient to admit or deny the truth or falsity of the allegations in this Paragraph, so they are denied.

15.  Delaney admits, on or about October 12, 2007, Delaney entered into a Retail Installment Sales Contract ("RISC") for the purchase of a 2003 Chevrolet pick-up truck (Delaney's "Vehicle") for personal, family or household use with Coliseum Motors. Delaney denies the remaining allegations in this Paragraph.

16.  Admitted.

17.  The RISC speaks for itself, so the allegations in this Paragraph are denied to the extent they conflict with the RISC.

18.  Delaney admits First Financial repossessed the Vehicle on or around May 1, 2008, but denies the remaining allegations in this Paragraph.

19. Delaney admits, after repossessing the Vehicle, First Financial mailed a presale notice to Delaney attempting to advise him of First Financial's intent to dispose of the Vehicle in purported compliance with the South Carolina Uniform Commercial Code (SC UCC). Delaney denies the remaining allegations in this Paragraph.

20. Delaney admits, after disposing of the Vehicle, First Financial mailed a post-sale notice to Delaney in purported compliance with the SC UCC, supposedly explaining some information related to how First Financial attempted to calculate Delaney's post-sale deficiency balance. Delaney denies the remaining allegations in this Paragraph.

21. The Amended Complaint in the Underlying Lawsuit speaks for itself, so the allegations in this Paragraph are denied to the extent they conflict with the Amended Complaint.

22. Denied.

23. Denied.

24. Admitted.

**For a First Cause of Action**
(Declaratory Judgment)

25. Delaney incorporates his answers in Paragraphs 1 through 24 above.

26. Admitted.

27. The Policy speaks for itself, so the allegations in this Paragraph are denied to the extent they conflict with the Policy.

28. The allegations in this Paragraph are legal conclusions to which no response is required. If a response is required, the allegations in this Paragraph are denied.

29. The allegations in this Paragraph are legal conclusions to which no response is required. If a response is required, the allegations in this Paragraph are denied.

30. The allegations in this Paragraph are legal conclusions to which no response is required. If a response is required, the allegations in this Paragraph are denied.

31. The Policy speaks for itself, so the allegations in this Paragraph are denied to the extent they conflict with the Policy.

32. The allegations in this Paragraph are legal conclusions to which no response is required. If a response is required, the allegations in this Paragraph are denied.

33. The Policy speaks for itself, so the allegations in this Paragraph are denied to the extent they conflict with the Policy.

34. Denied.

35. The Policy speaks for itself, so the allegations in this Paragraph are denied to the extent they conflict with the Policy.

36. The allegations in this Paragraph are legal conclusions to which no response is required. If a response is required, the allegations in this Paragraph are denied.

37. Denied.

38. Denied.

WHEREFORE, having fully answered, Delaney prays for judgment in Defendants' favor, denying all relief requested by State Farm, and awarding this relief:

A. Declaring State Farm had and continues to have a duty to defend First Financial for the claims in the Underlying Lawsuit.

B. Declaring State Farm breached its duty to defend.

C. Declaring State Farm must indemnify First Financial for the claims in the Underlying Lawsuit.

D. Awarding Delaney costs and such other relief as the Court deems just and proper.

## Affirmative Defenses

1. To the extent State Farm relies on policy exclusions or exceptions to coverage that were added to the Policy without proper notice, those exclusions or exceptions are void and unenforceable.

2. State Farm's complaint is barred in whole or part by waiver or estoppel because its reservation of rights letter failed to give fair notice of the bases upon which State Farm might dispute coverage, was ambiguous, or otherwise insufficient.

3. State Farm's complaint is barred in whole or part by laches.

4. State Farm's complaint is barred in whole or part by unclean hands.

## Counterclaim
### Nature of Case

1. Delaney seeks a declaration that State Farm had, and continues to have, a duty to defend and indemnify First Financial under the Policy for the claims in the Underlying Lawsuit.

2. This declaratory judgment action arises out of an underlying lawsuit filed by Delaney, individually and on behalf of others similarly situated, against First Financial in the Charleston County Court of Common Pleas captioned: *Otha Delaney, Individually and on behalf of all other similarly situated, v. First Financial of Charleston, Inc.*, C.A. No. 2011-CP-10-7166 ("the Underlying Lawsuit"). A copy of the Amended Complaint is located at Doc. # 1-15 and is incorporated by reference.

### Parties

3. Delaney is a citizen and resident of North Carolina.

4. State Farm is an insurance company organized and existing under the laws of the state of Illinois, with its principal place of business in Illinois.

5. First Financial is a corporation with its principal place of business in Charleston, South Carolina.

**Jurisdiction and Venue**

6. This court has jurisdiction over the parties and the subject matter of this counterclaim.

7. Venue is proper in this Court for this counterclaim.

**Underlying Lawsuit**

8. The Underlying Lawsuit is a consumer class action against First Financial seeking relief to redress an unlawful pattern of wrongdoing followed by First Financial regarding collection, enforcement, repossession and disposition of collateral, and collection of alleged deficiencies. *See* Doc. 1–15 ¶ 1.

9. Provisions of the SC UCC, §§ 36-9-601 through 9-635, form a comprehensive scheme governing a secured creditor's repossession and disposition of a consumer-debtor's collateral. *Id.* at ¶ 2.

10. Section 36-9-611(b) of the SC UCC requires a secured creditor, before disposition of a consumer's repossessed collateral, to send the consumer-debtor a "reasonable authenticated officiation of disposition," which provides the consumer-debtor with specific information about the intended disposition and the consumer-debtor's redemption rights. *Id.* at ¶ 3.

11. Sections 36-9-613 and 9-614 of the SC UCC set forth the mandatory information that the secured party must include in the written notice of intended sale of the collateral (hereinafter the "presale notice"), and Official Comment to U.C.C. § 9-614 instructs that a written notice to a consumer debtor or obligor which is not in compliance with the above-referenced sections is insufficient as a matter of law. *Id.* at ¶ 4.

12. After First Financial repossesses a consumer-debtor's collateral, but before it disposes of the collateral, it has employed a long-standing standard practice of mailing the consumer-debtor a form presale notice. *Id.* at ¶ 5.

13. After First Financial disposes of consumer-debtor's collateral, it has a standard practice of mailing consumer-debtor's a standard-form post-sale notice. *Id.* at ¶ 6.

14. As a direct and proximate result of failure to comply with the requirements of Subchapter 6 of Article 9 of the UCC, First Financial is liable for actual damages in the Underlying Lawsuit, including:

    a. loss of use of tangible property and cost of alternative transportation;

    b. loss resulting from the inability to obtain, or increased costs of, alternative financing;

    c. harm to credit worthiness, credit standing, credit capacity, character, and general reputation;

    d. harm caused by defamation, slander and libel;

    e. harm caused by invasion of privacy; and

    f. other uncertain and hard-to-quantify damages.

*Id.* at ¶ 78.

15. The Amended Complaint alleged:

    a. The defective presale and post-sale notices, and the reporting of false or inaccurate derogatory information on the class members' credit reports harmed the class members' credit worthiness, credit standing, credit capacity, character, and general reputation.

    b. The defective presale and post-sale notices, and the reporting of false or inaccurate derogatory information on the class members' credit reports were oral or written publication of material that defames, slanders or libels the class members.

c.  The defective presale and post-sale notices, and the reporting of false or inaccurate derogatory information on the class members' credit reports were oral or written publication of material that invaded the Class's privacy rights.

d.  The defective presale and post-sale notices were not mailed with knowledge of their falsity.

e.  The reporting of false or inaccurate derogatory information on the class members' credit reports was not done with knowledge of its falsity.

f.  Defendant's acts that violated the SC UCC do not involve or arise out of professional services the company provides to its customers.

g.  Defendant's acts that violated the SC UCC required no professional skill.

h.  Defendant's acts that violated the SC UCC required no specialized knowledge, labor, or skill.

i.  Defendant's acts that violated the SC UCC do not arise out of the operation or control of repossessed property.

j.  Defendant did not intend to violate the SC UCC and did not intend injury to the class because it believed its notices were accurate, lawful and contained no misrepresentations.

k.  Defendant did not know the presale and post-sale notices, and its reporting of information on the class members' credit reports would violate the rights of the class members or inflict injury upon them.

l.  Defendant made negligent misrepresentations in its presale and post-sale notices.

*See* Doc. 1–15 ¶¶ 31–42.

**The Policy**

16. State Farm issued a business policy of insurance to First Financial bearing policy number 99-CV-4371-3, for the policy period January 9, 2008 to January 9, 2009.

17. The Policy was renewed annually through January 9, 2022. Attached as Exhibit A to the Complaint (Doc. # 1) are what State Farm alleges are true and accurate copies of the Policy in effect from policy period January 9, 2008-January 9, 2009 through January 9, 2021-January 9, 2022.

18. The Policy provides:

**COVERAGE L – BUSINESS LIABILITY (Form FP-6103)[2]**

We will pay those sums that the insured becomes legally obligated to pay as damages because of … **personal injury** or **advertising injury** to which this insurance applies…. This insurance applies only … to **personal injury** caused by an occurrence committed in the coverage territory during the policy period. The occurrence must arise out of the conduct of your business, excluding advertising, publishing, broadcasting
or telecasting done by you or for you.

**Coverage L – Business Liability (Form CMP-4100)[3]**
When a Limit Of Insurance is shown in the Declarations for Coverage L – Business Liability, we will pay those sums that the insured becomes legally obligated to pay as damages because of … "personal and advertising injury" to which this insurance applies.

. . .

2. This insurance applies … To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.
. . .

19. Under the Policy, "**personal injury** means injury, other than **bodily injury**, arising out of one or more of the following offenses:

   a.   false arrest, detention or imprisonment;

   b.   malicious prosecution;

---

[2] This policy form was in place from January 9, 2008 – January 9, 2012.
[3] This policy form has been in place since January 9, 2012 and remains in effect.

    c.    the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, by or on behalf of its owner, landlord or lessor;

    d.    oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

    e.    oral or written publication, in any manner, of material that violates a person's right of privacy…"

20.    Under the Policy, "'personal and advertising injury' means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    a.    False arrest, detention or imprisonment;

    b.    Malicious prosecution;

    c.    The wrongful eviction from, wrongful entry into, or invasion of the right of privacy, of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    d.    Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    e.    Oral or written publication, in any manner, of material that violates a person's right of privacy; …"

21.    The Underlying Lawsuit involved claims for injury arising out of oral or written publication of material that slanders or libels Delaney and the class.

22.    The Underlying Lawsuit involved claims for injury arising out of oral or written publication of material that violates the Delaney's and the class's right of privacy.

23. The Underlying Lawsuit involved claims for invasion of privacy, defamation, slander, and libel.

24. Around August 19, 2021, State Farm sent a letter ("Reservation of Rights Letter") to First Financial recognizing that there may be coverage under the Policy and agreeing to provide First Financial with a defense in the Underlying Lawsuit subject to a purported reservation of rights. A true and accurate copy of the reservation of rights letter is attached as **Exhibit 1**.

25. The Reservation of Rights Letter confirmed the Underlying Lawsuit involved "alleged defamation and invasion of privacy claims."

26. The Reservation of Rights Letter confirmed "defamation and invasion of privacy are two of the enumerated offenses which trigger personal injury coverage under the Policy."

27. The "personal injury" and "personal and advertising injury" alleged in the Underlying Lawsuit was caused by offenses arising out of First Financial's business during the Policy period.

28. State Farm's decision to file a declaratory judgment action is a refusal to defend First Financial or indemnify First Financial for losses due to the Underlying Litigation.

## Count I – Declaratory Judgment

29. Delaney incorporates by reference the allegations in Paragraphs 1 through 28 above.

30. A justiciable controversy exists between the parties as to whether coverage is afforded under the Policy for the claims made by Delaney against First Financial in the Underlying Lawsuit.

31. The allegations against First Financial in the Underlying Lawsuit and the damages sought therein are covered under the Policy. Therefore, State Farm has a duty to defend and indemnify First Financial with respect to the Underlying Lawsuit.

32. Delaney is entitled to a judicial declaration that the Policy issued to First Financial provides coverage for the claims asserted in the Underlying Lawsuit; that State Farm has a duty to defend First Financial for the allegations contained in the Underlying Lawsuit; and that State Farm has a duty to indemnify First Financial for any damages awarded, judgment, or settlement resulting therefrom.

WHEREFORE, Delaney prays for judgment in Defendants' favor, denying all relief requested by State Farm, and awarding this relief:

E. Declaring State Farm had and continues to have a duty to defend First Financial for the claims in the Underlying Lawsuit.

F. Declaring State Farm breached its duty to defend.

G. Declaring State Farm must indemnify First Financial for the claims in the Underlying Lawsuit.

H. Awarding Delaney costs and such other relief as the Court deems just and proper.

                                                  TWENGE + TWOMBLEY LAW FIRM

BY:    __s/J. Ashley Twombley_____
           J. ASHLEY TWOMBLEY
           S.C. Bar #72916
           311 Carteret Street
           Beaufort, SC  29902
           (843) 982-0100
           twombley@twlawfirm.com
           Attorneys for Defendant, Otha Delaney

Beaufort, South Carolina

April 3, 2021