UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| State Farm Fire and Casualty Company, <br><br> Plaintiff, <br><br> v. <br><br> First Financial of Charleston, Inc. and Otha Delaney, individually and on behalf of all others similarly situated, <br><br> Defendants. | Case No.: 2:23-cv-263-RMG |

**Defendant Otha Delaney's Memorandum of Law
to Support Motion for Partial Judgment on the Pleadings**

Defendant/Counterclaimant Otha Delaney, by his attorneys, moves for judgment on the pleadings, under Fed. R. Civ. P. 12(c), on Plaintiff/Counterclaim-Defendant State Farm Fire and Casualty Company's ("State Farm") Complaint (Dkt. No. 1) and his Counterclaim (Dkt. No. 6 at 5–12) because State Farm had and continues to have a duty to defend First Financial of Charleston, Inc. ("First Financial") in the underlying lawsuit captioned *Delaney v. First Financial of Charleston, Inc.*, C.A. No. 2011-CP-10-7166 ("Underlying Lawsuit") (Dkt. No. 1-15).

1. **Background**

This is an insurance coverage case. State Farm commenced this action to obtain a declaratory judgment that it has no duty to defend or indemnify its insured, First Financial, regarding the Underlying Lawsuit. (Dkt. No. 1). Delaney counterclaimed against State Farm seeking, among other relief, a declaration that State Farm had and continues to have a duty to defend First Financial for the claims in the Underlying Lawsuit. (Dkt. No. 6).

1

### 1.1. Underlying Lawsuit

The Underlying Lawsuit is a consumer class action against First Financial seeking relief to redress an unlawful pattern of wrongdoing followed by First Financial regarding collection, enforcement, repossession and disposition of collateral, and collection of alleged deficiencies. (Dkt. No. 1-15 at ¶ 1). Delaney alleges First Financial repossessed and sold the collateral of many consumers without mailing them the notices required by Article 9 of South Carolina's Uniform Commercial Code ("SC UCC"). (*Id*. at ¶¶ 49–55). Rather, First Financial mailed Delaney and many other consumers deficient notices that violated the SC UCC's clear requirements. (*Id*.). Provisions of the SC UCC, §§ 36-9-601 through -635, form a comprehensive scheme governing a secured creditor's repossession and disposition of a consumer-debtor's collateral. (*Id*. at ¶ 2). Section 36-9-611(b) of the SC UCC requires a secured creditor, before disposition of a consumer's repossessed collateral, to send the consumer-debtor a "reasonable authenticated notification of disposition," which provides the consumer-debtor with specific information about the intended disposition and the consumer-debtor's redemption rights. (*Id*. at ¶ 3). Sections 36-9-613 and -614 of the SC UCC set forth the mandatory information that the secured party must include in the written notice of intended sale of the collateral (the "presale notice"), and Official Comment 2 to SC UCC section -614 instructs that a written notice to a consumer-debtor or obligor which is not in compliance with the above-referenced sections is insufficient as a matter of law. (*Id*. at ¶ 4).

According to the Underlying Lawsuit, after First Financial repossesses a consumer-debtor's collateral, but before it disposes of the collateral, it has employed a long-standing standard practice of mailing the consumer-debtor one of two similar form presale notices going back to 2008. (*Id*. at ¶ 5). The form presale notices included substantially similar language misstating consumer-debtor's rights under the SC UCC that discouraged consumer-debtor's from redeeming their collateral before First Financial sold it. (*Id*. at ¶¶ 50–55). The Underlying Lawsuit also alleges

after First Financial disposes of consumer-debtor's collateral, it has a standard practice of mailing consumer-debtor's one of two standard-form post-sale notices, purportedly explaining the surplus or deficiency on the consumer-debtor's account after applying sale proceeds to it. (*Id.* at ¶ 6). Though the two form post-sale notices are not identical, the two form post-sale notices used during the relevant class period share the same defects for purposes of Delaney's post-sale notice allegations: (1) the information provided in the post-sale notices are not in the order required by § 36-9-616; and (2) certain information required by § 36-9-616 is omitted from both post-sale notices. (*Id.* at ¶¶ 59–60, n.1). The Underlying Lawsuit claims as a direct and proximate result of First Financial's failure to comply with the requirements of Subchapter 6 of Article 9 of the UCC, First Financial is liable for actual damages in the Underlying Lawsuit, including:

    a. loss of use of tangible property and cost of alternative transportation;

    b. loss resulting from the inability to obtain, or increased costs of, alternative financing;

    c. harm to credit worthiness, credit standing, credit capacity, character, and general reputation;

    d. harm caused by defamation, slander and libel;

    e. harm caused by invasion of privacy; and

    f. other uncertain and hard-to-quantify damages.

(*Id.* at ¶ 78).

The Underlying Lawsuit alleged:

    a. The defective presale and post-sale notices, and the reporting of false or inaccurate derogatory information on the class members' credit reports harmed

the class members' credit worthiness, credit standing, credit capacity, character, and general reputation.

b. The defective presale and post-sale notices, and the reporting of false or inaccurate derogatory information on the class members' credit reports were oral or written publication of material that defames, slanders or libels the class members.

c. The defective presale and post-sale notices, and the reporting of false or inaccurate derogatory information on the class members' credit reports were oral or written publication of material that invaded the Class's privacy rights.

d. The defective presale and post-sale notices were not mailed with knowledge of their falsity.

e. The reporting of false or inaccurate derogatory information on the class members' credit reports was not done with knowledge of its falsity.

f. Defendant's acts that violated the SC UCC do not involve or arise out of professional services the company provides to its customers.

g. Defendant's acts that violated the SC UCC required no professional skill.

h. Defendant's acts that violated the SC UCC required no specialized knowledge, labor, or skill.

i. Defendant's acts that violated the SC UCC do not arise out of the operation or control of repossessed property.

j. Defendant did not intend to violate the SC UCC and did not intend injury to the class because it believed its notices were accurate, lawful and contained no misrepresentations.

  k. Defendant did not know the presale and post-sale notices, and its reporting of information on the class members' credit reports would violate the rights of the class members or inflict injury upon them.

  l. Defendant made negligent misrepresentations in its presale and post-sale notices.

(*Id.* at ¶¶ 31–42).

### 1.2. Insurance Policies

State Farm issued a business policy of insurance to First Financial bearing policy number 99-CV-4371-3, for the policy period January 9, 2008 to January 9, 2009 (Dkt. Nos. 1 at ¶ 9; 6 at ¶ 16). The policy was renewed annually through January 9, 2022. (Dkt. Nos. 1 at ¶ 9; 6 at ¶ 17). Attached as Exhibit A (Dkt. Nos. 1-1 through 1-14) to the Complaint (Dkt. No. 1) are what State Farm alleges are true and accurate copies of the policies in effect from January 9, 2008 through January 9, 2022. (Dkt. Nos. 1 at ¶ 9; 6 at ¶ 17).

The policies provide:

**COVERAGE L – BUSINESS LIABILITY (Form FP-6103)**[1]
We will pay those sums that the insured becomes legally obligated to pay as damages because of … **personal injury** … to which this insurance applies…. This insurance applies only … to **personal injury** caused by an occurrence committed in the coverage territory during the policy period. The occurrence must arise out of the conduct of your business….

**Coverage L – Business Liability (Form CMP-4100)**[2]
When a Limit Of Insurance is shown in the Declarations for Coverage L – Business Liability, we will pay those sums that the insured becomes legally obligated to pay as damages because of … "personal and advertising injury" to which this insurance applies.

. . .

---

[1] This policy form was in place from January 9, 2008–January 9, 2012. (Dkt. Nos. 1-1 at 38, 1-2 at 39, 1-3 at 39, and 1-4 at 44).

[2] This policy form has been in place since January 9, 2012, and remains in effect. (Dkt. Nos. 1-5 at 71, 1-6 at 59, 1-7 at 59, 1-8 at 59, 1-9 at 59, 1-10 at 60, 1-11 at 61, 1-12 at 69, 1-13 at 68, and 1-14 at 68).

> 2. This insurance applies … To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

Under the policies, "**personal injury** means injury, other than **bodily injury**, arising out of one or more of the following offenses:

> a. false arrest, detention or imprisonment;
>
> b. malicious prosecution;
>
> c. the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, by or on behalf of its owner, landlord or lessor;
>
> d. oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or
>
> e. oral or written publication, in any manner, of material that violates a person's right of privacy…

(*E.g.*, Dkt. No. 1-1 at 17).

Under the policies, "'personal and advertising injury' means injury, including consequential 'bodily injury', arising out of one or more of the following offenses:

> a. False arrest, detention or imprisonment;
>
> b. Malicious prosecution;
>
> c. The wrongful eviction from, wrongful entry into, or invasion of the right of privacy, of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    d.   Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    e.   Oral or written publication, in any manner, of material that violates a person's right of privacy; …"

(*E.g.*, Dkt. No. 1-5 at 84).

### 1.3. Reservation of Rights Letter

First Financial sought defense and indemnity from State Farm under the Policy based on the allegations in the Underlying Lawsuit. (Dkt. Nos. 1 at ¶¶ 13–14; 6-1 at 1). 24. Around August 19, 2021, State Farm sent a letter ("Reservation of Rights Letter") to First Financial admitting a possibility of coverage exists under the Policy and agreeing to provide First Financial with a defense in the Underlying Lawsuit subject to a purported reservation of rights. (Dkt. No. 6-1 at 1). 25. The Reservation of Rights Letter confirmed the Underlying Lawsuit involved "alleged defamation and invasion of privacy claims," which "are two of the enumerated offenses **which trigger personal injury coverage under the Policy**." (*Id.* at 4) (emphasis added). The only reason provided by State Farm in the Reservation of Rights letter as to why there might not be coverage for the alleged defamation and invasion of privacy claims was if "such claims did not occur during the policy period." (*Id.*).

### 2. Legal Standard

Judgment on the pleadings is appropriate where no set of facts would entitle the nonmovant to relief. *See Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014). Judgment on the pleadings is appropriate to decide the "question of whether a duty to defend exists based on the allegations of the amended complaint" in the Underlying Lawsuit because it doesn't "require this Court to 'resolve factual questions at all[.]" *Gen. Star Indem. Co. v. Condustrial, Inc.*, No. 2:22-

7

cv-3811-RMG, 2023 WL 388135, at *5 (D.S.C. Jan. 25, 2023). Rather, this Court "need only decide such coverage by comparing what [Delaney] *has alleged* in the state court action with the language of the [State Farm] insurance policy." *Id.* (quoting *Penn-Am. Ins. Co. v. Coffey*, 368 F.3d 409, 413 (4th Cir. 2004)).

Under South Carolina law, the duty to defend is broader than the duty to indemnify. *Ross Dev. Corp. v. Fireman's Fund Ins. Co.,* 809 F. Supp. 2d 449, 457 (D.S.C. 2011). "If the underlying complaint creates a *possibility* of coverage under an insurance policy, the insurer is obligated to defend." *City of Hartsville v. South Carolina Mun. Ins. & Risk Fin. Fund*, 382 S.C. 535, 543, 545 (2009) (emphasis added). The "duty to defend is triggered where the underlying complaint includes any allegation that raises the possibility that coverage exists." *McElveen v. The Cincinnati Ins. Co.*, 422 F. Supp. 3d 1068, 1074 (D.S.C. Oct. 30, 2019). The underlying "complaint is construed liberally, with all doubts resolved in favor of the insured." *Union Ins. Co. v. Soleil Grp., Inc.,* 465 F. Supp. 2d 567, 573 (D.S.C. 2006). In "examining the complaint, we must look beyond the labels describing the acts, to the acts themselves which form the basis of the claim against the insurer[.]" *State Farm Fire & Cas. Co. v. Lang*, No. 2:21-cv-1063-RMG, 2021 WL 3856187, at *3 (D.S.C. Aug. 27, 2021) (quoting *Prior v. S.C. Med. Malpractice Liab. Ins. Joint Underwriting Ass'n*, 305 S.C. 247, 249 (Ct. App. 1991)). In fact, Delaney's allegations "trigger personal injury coverage under the Policy."

### 3. Discussion

Comparing Delaney's allegations in the Underlying Lawsuit to the language in the State Farm policies shows—as State Farm admitted in its reservation of rights letter—there is a possibility of coverage, so State Farm has a duty to defend. In State Farm's own words: "With regard to the alleged defamation and invasion of privacy claims, defamation and invasion of

privacy are two of the enumerated offenses which ***trigger personal injury coverage under the Policy.***" (Dkt. No. 6-1 at 4).

State Farm takes the opposite position for its declaratory judgment action here: "The allegations against First Financial in the Underlying Lawsuit and the damages sought therein are not covered under the Policy. Therefore, State Farm has no duty to defend or indemnify First Financial with respect to the Underlying Lawsuit." (Dkt. No. 1 at ¶ 37). State Farm reaches this conclusion based on its new assertion that:

> There are no claims asserted in the Underlying Lawsuit that constitute "personal injury" or "personal and advertising injury" as defined in the Policy. Further, to the extent First Financial is obligated to pay statutory damages, such damages are not because of "personal injury" or "personal and advertising injury" as defined by the Policy. (*Id.* at ¶ 34).
>
> Claims for violations of the UCC are not "occurrences" as defined by the Policy. (*Id.* at ¶ 36).

State Farm's newly-minted position focuses on self-described labels instead of Delaney's allegations. State Farm then attempts to construe Delaney's allegations strictly instead of liberally, and then asks the Court to resolve all doubts in favor of State farm, instead of Delaney as required. Under the proper analysis—the same analysis State Farm employed when it drafted and sent its reservation of rights letter—State Farm has a duty to defend because Delaney's "allegations created a 'possibility of coverage under' the Policy." *Lang*, 2021 WL 3856187, at *3.

### 3.1. The Underlying Lawsuit has allegations that trigger "Personal Injury" and "Personal and Advertising Injury."

State Farm's policies define "Personal Injury" and "Personal and Advertising Injury" to include "injury … arising out of … d. Oral or written publication, in any manner, of material that slanders or libels a person … ; e. Oral or written publication, in any manner, of material that violates a person's right of privacy; …" (*E.g.*, Dkt. Nos. 1-1 at 17, 1-5 at 84). The Underlying Lawsuit contains allegations that fall squarely within those definitions:

9

>31. The defective presale and post-sale notices, and the reporting of false or inaccurate derogatory information on the class members' credit reports harmed the class members' credit worthiness, credit standing, credit capacity, character, and general reputation.
>
>32. The defective presale and post-sale notices, and the reporting of false or inaccurate derogatory information on the class members' credit reports were oral or written publication of material that defames, slanders or libels the class members.
>
>33. The defective presale and post-sale notices, and the reporting of false or inaccurate derogatory information on the class members' credit reports were oral or written publication of material that invaded the Class's privacy rights.

(Dkt. No. 1-15 at ¶ 1). These allegations invoke the possibility of coverage, triggering State Farm's duty to defend. *Universal N. Am. v. Frey*, No. 2:11-cv-02381-DCN, 2012 WL 2428560, at *2 (D.S.C. June 27, 2012) ("In the underlying complaint, Burns alleges that Frey made 'false and defamatory statements regarding Burns' in the December 13, 2010 email. *See* State Ct. Compl. ¶¶ 15, 18–24. For this reason, Universal has shown that the underlying complaint raises a claim for a covered 'personal injury.'"); *Alltru Fed. Credit Union v. Starnet Ins. Co.*, No. 4:21-cv-01334-JAR, 2022 WL 4482405, at *7 (E.D. Mo. Sept. 27, 2022) (finding identical allegations "show a potential for coverage under Insuring Agreement K," which included coverage for "libel or slander … that defames a person… or … violation of the right of privacy….").

Whether "claims for violations of the UCC" are "occurrences" under the Policy is irrelevant because this Court doesn't look at labels, it looks at the underlying allegations to determine whether there is a possibility of coverage. *Lang*, 2021 WL 3856187, at *3; *Union Ins. Co,* 465 F. Supp. 2d at 573–74; *Cont'l Cas. Co. v. Amerisure Ins. Co.*, 886 F.3d 366, 371 (4th Cir.

2018) ("Allegations of facts that describe a hybrid of covered and excluded events or pleadings that disclose a mere possibility that the insured is liable suffice to impose a duty to defend. Thus, an insurer must defend its insured against a lawsuit unless no allegation is even arguably covered by the policy." (internal quotes, ellipses, and citations omitted)). The allegations clearly create the possibility of coverage that triggers State Farm's duty to defend. *McElveen*, 422 F. Supp. 3d at 1074 ("The duty to defend is broader than the duty to indemnify and is triggered when the underlying complaint includes ***any allegation*** that raises the possibility that coverage exists." (emphasis added)). Indeed, it is generally undisputed that the damages stemming from "allegedly false or derogatory credit reporting would be covered as 'personal injury' damages under the above definition" in policies with same language as in State Farm's policies. *Anheuser Busch Emp. Credit Union v. Travelers Prop. Cas. Co. of Am.*, No. 4:18-cv-1208-CDP, 2020 WL 1675685, at *5 (E.D. Mo. Apr. 6, 2020).

### 3.2. The Underlying Lawsuit seeks damages because of "Personal Injury" and "Personal and Advertising Injury."

State Farm's policies provide coverage for "damages because of" "Personal Injury" and "Personal and Advertising Injury." (*E.g.*, Dkt. Nos. 1-1 at 38, 1-5 at 71). The Underlying Lawsuit seeks damages because of "Personal Injury" and "Personal and Advertising Injury" in the form of defamation, invasion of privacy, and harm to credit worthiness. Specifically, the Underlying Lawsuit alleges:

> As a direct and proximate result of First Financial's failure to comply with the requirements of Subchapter 6 of Article 9 of the UCC, First Financial is liable for actual damages in the Underlying Lawsuit, including:
>
> a. loss of use of tangible property and cost of alternative transportation;
> b. loss resulting from the inability to obtain, or increased costs of, alternative financing;
> c. harm to credit worthiness, credit standing, credit capacity, character, and general reputation;
> d. harm caused by defamation, slander and libel;

11

      e.      harm caused by invasion of privacy; and

      f.      other uncertain and hard-to-quantify damages.

(Dkt. No. 1-15 at ¶ 78). This identical allegation has been characterized as alleging "personal injury damages in the form of defamation and harm to creditworthiness." *Anheuser Busch Emp. Credit Union*, 2020 WL 1675685, at *1. Unsurprisingly, the parties in *Anheuser Busch Emp. Credit Union* agreed "the asserted damages stemming from [insured's] allegedly false or derogatory credit reporting would be covered as 'personal injury' damages under" the same definition present in State Farm's policies. *Id.* at *5. The only disagreement was over the interpretation of an exclusion not present here. *Id.*

### 4. Conclusion

Under the controlling law, if there is any possibility for coverage after comparing the underlying complaint and the operative policy, the insurer must defend its policyholder. In this matter, the underlying complaint and State Farm's policies establish, at the very minimum, the possibility of coverage. Indeed, State Farm admitted a possibility of coverage exists in its Reservation of Rights Letter. Thus, Delaney respectfully requests the Court grant his motion for judgment on the pleadings, enter judgment finding State Farm has a duty to defend First Financial, and dismiss without prejudice the parties' duty to indemnify claims as premature. *See* Dkt No. 28 at ¶ 59 ("State Farm would show any duty to indemnify First Financial Charleston in the underlying lawsuit is premature[.]"); *see also, e.g.*, *Colony Ins. Co. v. Hucks Pool Co., Inc.*, No. 4:17-cv-02014-RBH, 2018 WL 902295, at *3 (D.S.C. Feb. 15, 2018); *U.S. Fidelity & Guar. Co. v. Ellett Bros., Inc.*, 2003 WL 23851137, at *2-8 (D.S.C. Feb. 11, 2003). The Court should also award Delaney and/or First Financial attorney's fees for defending the declaratory judgment action brought by State Farm. *Sec. Ins. Co. of Hartford v. Campbell Schneider & Assocs., LLC*, 481 F. Supp. 2d 496, 503 (D.S.C. 2007).

                                                TWENGE + TWOMBLEY LAW FIRM

BY:    s/J. Ashley Twombley\_\_\_\_\_  
         J. ASHLEY TWOMBLEY  
         S.C. Bar #72916  
         311 Carteret Street  
         Beaufort, SC 29902  
         (843) 982-0100  
         twombley@twlawfirm.com  
         Attorney for Plaintiff

Beaufort, South Carolina

October 16, 2023