**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| State Farm Fire and Casualty Company, | ) | **PLAINTIFF'S MEMORANDUM IN** |
| | ) | **SUPPORT OF ITS MOTION FOR** |
| Plaintiff, | ) | **PARTIAL JUDGMENT ON THE** |
| | ) | **PLEADINGS AND IN OPPOSITION TO** |
| vs. | ) | **DEFENDANT OTHA DELANEY'S** |
| | ) | **MOTION FOR PARTIAL JUDGMENT** |
| First Financial of Charleston, Inc. and Otha | ) | **ON THE PLEADINGS** |
| Delaney, individually and on behalf of all | ) | |
| others similarly situated, | ) | |
| | ) | C.A. No. 2:23-cv-00263-RMG |
| Defendants. | ) | |

Plaintiff State Farm Fire and Casualty Company ("State Farm"), by and through its undersigned counsel, files this Memorandum in Support of State Farm's Motion for Partial Judgment on the Pleadings and in Opposition to Defendant Otha Delaney's ("Delaney") Motion for Partial Judgment on the Pleadings [D.E. #30]. For the reasons set forth below, Delaney's motion should be denied and State Farm is entitled to judgment in its favor on its claim for declaratory judgment and Delaney and Defendant First Financial of Charleston, Inc.'s ("First Financial") declaratory judgment counterclaims concerning coverage.

## INTRODUCTION

This is a declaratory judgment action in which State Farm seeks a declaration regarding its duty to defend and indemnify First Financial in an underlying lawsuit brought by Delaney. [D.E. #1]. In his motion, Delaney seeks a declaration that State Farm has a duty to defend and indemnify First Financial in the underlying lawsuit. The underlying lawsuit is a class action in which Delaney, on behalf of the class, seeks injunctive relief, declaratory relief, and statutory damages for violations of the South Carolina Uniform Commercial Code. These are not covered claims under

the State Farm policies and Delaney does not seek covered damages. As such, he is not entitled to a declaration that State Farm has a duty to defend and indemnify First Financial and his motion for partial judgment on the pleadings should be denied. Instead, State Farm's motion for judgment on the pleadings should be granted as to all of the claims for declaratory judgment.

## BACKGROUND AND PROCEDURAL HISTORY

In this declaratory judgment action, State Farm seeks a declaration regarding its rights and obligations to First Financial under a business policy issued to First Financial, bearing policy number 99-CV-4371-3, for the policy periods January 9, 2008 to January 9, 2022 ("the Policy"). [D.E. #1, ¶9]. In particular, State Farm seeks a declaration that it has no duty to defend or indemnify First Financial in a lawsuit filed by Delaney, individually and on behalf of all others similarly situated, pending in the Charleston County Court of Common Pleas captioned *Otha Delaney, Individually and on behalf of all other similarly situated, v. First Financial of Charleston, Inc.*, C.A. No. 2011-CP-10-7166 ("the Underlying Lawsuit"). [*Id*. at ¶10]. The Underlying Lawsuit is a class action lawsuit against First Financial, a secured creditor, arising out of its alleged deficient pre- and post-sale notices for the disposition or sale of vehicles after the class members defaulted on their loans. [D.E. #1-15]. There are two causes of action in the Underlying Lawsuit, both of which are based upon violations of the South Carolina Uniform Commercial Code ("SC UCC"): (1) Presale Notice Violations of S.C. Code §§36-9-611 and 9-614; and (2) Post-sale Notice Violations of S.C. Code §36-9-616. [*Id*. at ¶¶77-78 and 80-82].

The Underlying Lawsuit has a tortured history. It was first filed against First Financial on October 4, 2011, more than eleven (11) years ago. [D.E. #1, ¶11] [D.E. #8, ¶11] [D.E. #16-1, ¶11]. During the years leading up to State Farm's first notice, the case was dismissed, appealed, and, eventually, in May 2019, the South Carolina Supreme Court reversed the dismissal and remanded

the case.[1] First Financial, however, did not provide State Farm with notice of the Underlying Lawsuit until April 2021, nearly ten (10) years after the Underlying Lawsuit was filed and two (2) years after the South Carolina Supreme Court's Order. [D.E. #1, ¶13] [D.E. #8, ¶13] [D.E. #16-1, ¶13]. Despite First Financial's delay in providing State Farm with notice, after reviewing the pleadings and the various iterations of the Policy in effect over a fourteen-year period, State Farm agreed to provide First Financial with a defense subject to a reservation of its rights and defenses under the Policy. [D.E. #1, ¶14] [D.E. #8, ¶14] [D.E. #16-1, ¶14]. A copy of State Farm's August 19, 2021 reservation of rights letter to First Financial is attached as Exhibit 1 to Otha Delaney's ("Delaney") Answer and Counterclaim. [D.E. #6-1]. State Farm issued a supplemental reservation of rights letter to First Financial dated June 7, 2022. A copy of State Farm's June 7, 2022 reservation of rights letter is attached hereto as **Exhibit A** and incorporated herein by reference.[2]

---

[1] In resolving a motion for judgment on the pleadings, a court may consider the exhibits attached to the pleadings, relevant facts obtained from the public record, and exhibits to the motion that are "integral to the complaint and authentic." *Progressive N. Ins. Co. v. Ladue*, No. 2:20-CV-3068-DCN, 2021 WL 2003185 (D.S.C. May 19, 2021) (internal citation omitted).

[2] Delaney relies solely on the August 19, 2021 reservation of rights letter in support of his motion; however, State Farm's August reservation of rights was supplemented on June 7, 2022. The Court may consider the June 7, 2022 supplemental reservation of rights letter without converting State Farm's motion into a motion for summary judgment because it is integral to the allegations the declaratory judgment action [*see* D.E. #1, ¶14], Delaney's counterclaim [*see* D.E. #6, ¶24], and the basis for Delaney's motion. *See e.g., Douse v. Colonial Life & Accident Ins. Co.*, No. CV 3:08-1671-CMC, 2009 WL 10678302, at *2 (D.S.C. Feb. 3, 2009) ("Certain matters beyond the pleadings may be considered in resolving a motion for judgment on the pleadings. For example, the court may consider contractual documents which are not attached to the complaint where those documents are "integral to and explicitly relied on in the complaint" and where there is no dispute as to authenticity." (internal citations and quotations omitted)), *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (evaluating whether the court properly considered an incident report on a motion to dismiss because the claims were not based on the incident report) and *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (explaining that a document is "integral to the complaint" "where the complaint relies heavily upon its terms and effect" (internal quotation marks omitted)).

Around the time State Farm was first provided with notice of the Underlying Lawsuit, First Financial filed a second motion to dismiss the action, which the Court denied by Order dated August 19, 2021. In addition, Delaney filed a motion for class certification. First Financial opposed class certification, but the Court granted the motion by Order dated July 27, 2021. A copy of the July 27, 2021 Order is attached hereto as **Exhibit B** and incorporated herein by reference.

In its Order, the Court held class certification was appropriate and, with respect to the required element of commonality, cited Delaney's memorandum in support of class certification noting "[a] determination of whether the Delaney Presale Notice and the Revised Presale Notice complied with the requirements of S.C. Code Ann. § 36-9-611 and § 36-9-614 will resolve all claims of the putative class." *See* Exhibit B, p. 6. Further, with respect to the amount in controversy, the Court summarized the relief Delaney sought on behalf of the class as follows:

> Here, the Plaintiff seeks statutory damages as provided by S.C. Code Ann. §36-9-635(c)(2), injunctive relief enjoining FCC from engaging in alleged statutorily noncompliant actions, and a declaration that the presale notices sent by FCC failed to comply with S.C. Code Ann. § 36-9-611 and § 36-9-614. S.C. Code Ann. §36-9-625(c)(2) provides a formula for damages for noncompliance with S.C. Code Ann. § 36-9-611 and § 36-9-614.4. The Plaintiff asserts that, under the formula set forth by S.C. Code Ann. §36-9-625(c)(2), each putative class members' damages would exceed $100.00. See Memorandum in Support at 23. Moreover, conceivably, even if the putative class members did not meet the $100.00 amount in controversy, the relief sought by the Plaintiff is primarily injunctive and declaratory, as the Plaintiff seeks injunctive relief enjoining FCC from engaging in alleged statutorily noncompliant actions, and a declaration that the presale notices sent by FCC failed to comply with S.C. Code Ann. § 36-9-611 and § 36-9-614. S.C. Code Ann.

*See id.* at p. 8.

The Court does not reference, cite or otherwise mention any other relief or damages sought on behalf of the class, nor could it because the Order is consistent with the position advanced by Delaney in his memorandum in support of class certification. A copy of Delaney's memorandum (not including exhibits) is attached hereto as **Exhibit C**. In that memorandum, Delaney explains

that the Underlying Lawsuit "involves illegal conduct of First Financial" in violation of the SC UCC's "strict statutory scheme" mandating pre- and post-sale notice procedures. *See* Exhibit C, pp. 1-2. According to Delaney, "[he] and the Class's claims derive from [First Financial's] failure to send statutorily-compliant notices as mandated by §§ 36-9-611, 36-9-613, 36-9-614, and § 36-9-616 of the [SC UCC]." *Id*. at pp. 3-4.

With respect to damages and the amount in controversy, Delaney represented he was seeking the following relief:

(1)     Statutory damages pursuant to § 36-9-625(c)(2) of the SC UCC based on [First Financial's] deficient presale notices that violated §§ 36-9-611, 36-9-613, and 36-9-614;

(2)     Five hundred dollars ($500), pursuant to § 36-9-625(e)(5), for each failure to comply with §§ 36-9-616(b), which requires a statutorily-compliant post-sale notice after the disposition of the class members' vehicles that explains how [First Financial] calculated the class members' alleged deficiency;

(3)     Based on the absolute bar rule, which applies based on [First Financial's] noncompliance with the SC UCC and Consumer Protection Code, an order stating no deficiency is owned on their loans;

(4)     An order that [First Financial] shall request that Equifax, Experian, and TransUnion delete from the class members' credit reports the tradelines associated with the loans implicated by this litigation.

*Id*. at p. 15. Delaney also explained how each class member's damages would be calculated under the SC UCC:

Recovery for each post-sale notice violation imposes a flat penalty of $500. See § 36-9-625(e). Each member's presale notice damages would exceed $100 as well, which is equal to the "Finance Charge" plus 10% of the "Amount Financed" identified in the loans' TILA boxes. See § 36-9- 625(c)(2); (see also Ex. C, p. 1).

*Id*. at p. 23. Further, anticipating First Financial's opposition to class certification, Delaney explained the commonality of the damages sought on behalf of the proposed class as follows:

Most of the relief sought by the class members is wholly uniform: statutory damages of $500 for each post-sale notice violation, injunctive relief (enjoining [First Financial] from collecting deficiency balances, time price differential, and delinquency and collection charges and compelling [First Financial] to have any adverse credit information it wrongfully reported removed from Class members'

5

credit reports), and declarations that [First Financial's] presale and post-sale notices violated the law.

The only relief sought by Delaney and the Class that is not strictly uniform is statutory damages under § 36-9-625(c)(2). But calculating these damages is a mechanical task that merely requires the parties to plug information from the Class members' loan agreements into the statutory formula provided in § 36-9-625(c)(2): the "finance charge" plus ten percent of the "amount financed" (as shown on the face of every Class member's loan agreement).

*Id*. at p. 27 (emphasis added). In fact, Delaney stated "[t]he Court need not make individual determinations on how each class member was impacted by [First Financial's] violations. The SC UCC claims depend solely on the secured creditor's compliance (or noncompliance) with statutory provisions." *Id*. at p. 29. Delaney never sought any damages other than statutory damages. *See id*.

Thereafter, First Financial filed motions to alter, amend and/or reconsider the court's orders. The Court denied First Financial's motions and First Financial appealed on December 8, 2021. Recently, on October 16, 2023, First Financial's Writ of Certiorari was denied and the Court of Appeals dismissed the appeal. State Farm continues to provide First Financial with a defense in the Underlying Lawsuit subject to a reservation of its rights and defenses under the Policy.

## <u>LEGAL STANDARD</u>

A motion for judgment on the pleadings is properly granted if, taking all well-pleaded allegations as true and drawing all reasonable factual inferences in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of its claim entitling it to relief. *Pulte Home Corp. v. Montgomery Cnty., Maryland*, 909 F.3d 685, 691 (4th Cir. 2018). As such, "the court must accept all well pleaded factual allegations in the non-moving party's pleadings as true and reject all contravening assertions in the moving party's pleadings as false." *Thomas Daniels Agency, Inc. v. Nationwide Ins. Co. of Am.*, 122 F. Supp. 3d 448, 451 (D.S.C. 2015) (internal citation and quotations omitted).

A "motion for judgment on the pleadings should not be granted if the complaint is based on a cognizable legal theory and contains 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Middleton v. Andino*, 474 F. Supp. 3d 768, 773 (D.S.C. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)). "The 'court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Id*. (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). "[C]ourts generally do not dismiss claims presenting novel issues of law at the pleadings stage." *Id*. (internal citations and quotations omitted).

## GENERAL RULES OF INSURANCE CONTRACT CONSTRUCTION

Under South Carolina law, insurance policies are subject to the general rules of contract construction. *M&M Corp. of S.C. v. Auto-Owners Ins. Co.*, 701 S.E.2d 33, 35 (S.C. 2010); *B.L.G. Enters., Inc. v. First Fin. Ins. Co.*, 514 S.E.2d 529, 535 (S.C. 1999). An insurer's duties and obligations under a policy of insurance are defined by the terms and provisions of the policy itself and cannot be enlarged by judicial construction. *Nationwide Mutual Ins. Co. v. Commercial Bank,* 479 S.E.2d 524 (S.C. Ct. App.1996). When the language of the policy is free from ambiguity, the words must be taken and understood in their plain, ordinary, and popular sense. *Diamond State Ins. Co. v. Homestead Industries, Inc.*, 456 S.E.2d 912, 915 (S.C. 1995); *Fritz- Pontiac-Cadillac- Buick v. Goforth*, 440 S.E.2d 367, 369 (S.C. 1994). Where the intent of the parties is clear, courts do not have the authority to torture the meaning of policy language to extend or defeat coverage that was never intended by the parties. *Diamond State*, 456 S.E.2d at 915.[3] Further, insurers have the right to limit their liability and to impose conditions on their obligations provided they are not

---

[3] No defendant has claimed the Policy is ambiguous in any respect.

in contravention of public policy or a statutory prohibition. *B.L.G. Enters., Inc.*, 514 S.E.2d at 535-536. The construction of an insurance contract is a question of law for the court. *Bennett & Bennett Constru., Inc. v. Auto Owners Ins. Co.*, 747 S.E.2d 426, 427 (S.C. 2013).

"[T]he obligation of a liability insurance company to defend and indemnify is determined by the allegations in the complaint." *Collins Holding Corp. v. Wausau Underwriters Ins. Co.*, 666 S.E.2d 897, 899 (S.C. 2008). "If the facts alleged in the complaint fail to bring a claim within the policy's coverage, the insurer has no duty to defend." *Id.* "The insured must show that the underlying complaint creates a 'reasonable possibility' of coverage under the insurance policy." *Id.* at 600–01 (internal citations omitted). A party cannot invoke coverage by mischaracterizing its claims or couching uncovered claims as covered claims. *See Manufacturers & Merchants Mut. Ins. Co. v. Harvey*, 498 S.E.2d 222, 227 (S.C. Ct. App. 1998) ("While alternative pleading is permitted in South Carolina, parties may not attempt to invoke coverage by couching intentional acts in negligence terms."). The court looks at the actual facts alleged in the complaint rather than the labels ascribed to the claims. *City of Hartsville v. S.C. Mun. Ins. & Risk Financing Fund*, 677 S.E.2d 574, 578-79 (S.C. 2009); *State Farm Fire & Cas. v. Barrett*, 530 S.E.2d 132, 137 (S.C. Ct. App. 2000). The burden of proof is on the party seeking coverage to show that a claim falls within the coverage of an insurance contract, and the insurer bears the burden of establishing exclusions to coverage. *Agape Senior Primary Care, Inc. v. Evanston Ins. Co.*, 304 F. Supp. 3d 492, 497 (D.S.C. 2018).

## **ARGUMENT**

Delaney seeks a declaration that State Farm has a duty to defend First Financial in the Underlying Lawsuit based on selective allegations in the amended complaint in the Underlying Lawsuit and excerpts from State Farm's August 19, 2021 reservation of rights letter, which was

later supplemented. Delaney blatantly ignores the totality of his allegations and requested relief in the Underlying Lawsuit and State Farm's reservation of rights letters, none of which create a duty to defend or indemnify. The amended complaint is a class action in which Delaney, on behalf of the class, seeks statutory damages for violations of the SC UCC. Delaney has not sought damages for covered claims under the Policy.

The burden of proof is on the party seeking coverage, not State Farm, to show that the claims against First Financial fall within the coverage of the Policy.[4] *See Agape Senior Primary Care, Inc.*, 304 F. Supp. 3d at 497. Delaney has not satisfied his burden of proof and, therefore, is not entitled to a declaration of coverage under the Policy. As such, Delaney's motion should be denied and State Farm is entitled to (1) a declaration that it has no duty to defend or indemnify First Financial in the Underlying Lawsuit and (2) judgment in its favor on Delaney's and First Financial's counterclaims for declaratory judgment.

## I.     Delaney is judicially estopped from advancing his current position in an effort to create coverage under the Policy.

The Underlying Lawsuit is about one thing: First Financial's alleged violations of the SC UCC. [*See* D.E. #1-15]. Delaney alleges First Financial sent deficient pre- and post-sale notices in violation of the SC UCC and seeks statutory damages, injunctive relief, and declaratory relief as a result of those violations. [*See id.*]. These are the <u>only</u> claims for relief in the amended complaint and Delaney confirmed this in his memorandum in support of class certification:

> The Court need not make individual determinations on how each class member was impacted by [First Financial's] violations. <u>The SC UCC claims depend solely on the secured creditor's compliance (or noncompliance) with statutory provisions</u>.

*See* Exhibit C, p. 29 (emphasis added).

---

[4] State Farm's coverage position is not based on the application of an exclusion.

> Most of the relief sought by the class members is wholly uniform: statutory damages of $500 for each post[1]sale notice violation, injunctive relief (enjoining [First Financial] from collecting deficiency balances, time price differential, and delinquency and collection charges and compelling [First Financial] to have any adverse credit information it wrongfully reported removed from Class members' credit reports), and declarations that [First Financial's] presale and post-sale notices violated the law.
>
> The only relief sought by Delaney and the Class that is not strictly uniform is statutory damages under § 36-9-625(c)(2). But calculating these damages is a mechanical task that merely requires the parties to plug information from the Class members' loan agreements into the statutory formula provided in § 36-9-625(c)(2): the "finance charge" plus ten percent of the "amount financed" (as shown on the face of every Class member's loan agreement).

*Id*. at p. 27 (emphasis added). The Court agreed with Delaney's characterization and granted class certification on that basis. *See* Exhibit B.

Now, in an effort to mislead the Court and create coverage under the Policy where none exists, Delaney takes a wholly inconsistent position, mischaracterizing his statutory claims and the relief sought in the Underlying Lawsuit as common law tort claims for defamation and invasion of privacy.[5] Delaney is judicially estopped from advancing this position.

"Judicial estoppel, an equitable doctrine that prevents a party who has successfully taken a position in one proceeding from taking the opposite position in a subsequent proceeding, is recognized to protect the integrity of the judicial system. The doctrine is invoked to prevent a party from playing fast and loose with the courts, from blowing hot and cold as the occasion demands, or from attempting to mislead the courts to gain unfair advantage." *Kiawah Island Util., Inc. v. Westport Ins. Corp.*, No. 2:19-CV-1359-DCN, 2019 WL 5395966, at *3 (D.S.C. Oct. 22, 2019)

---

[5] At the time Delaney filed his memorandum in support of class certification, the amended complaint, which references defamation and invasion of privacy, had been filed for three (3) months. Nevertheless, these "claims," and alleged damages suffered from these "claims," are never referenced in Delaney's class certification memorandum.

(internal citations and quotations omitted); *Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1167 (4th Cir. 1982).

"In order for judicial estoppel to apply, (1) the party sought to be estopped must be seeking to adopt a position that is inconsistent with a stance taken in prior litigation; (2) the position sought to be estopped must be one of fact rather than law or legal theory; (3) the prior inconsistent position must have been accepted by the court; and (4) the party sought to be estopped must have intentionally misled the court to gain unfair advantage." *Kiawah Island*, at *3; *In re Boyd*, 618 B.R. 133, 157 (Bankr. D.S.C. 2020). "This bad faith requirement is the 'determinative factor.'" *Boyd*, 618 B.R. at 157 (internal citations omitted).

All requirements are satisfied here. Delaney explicitly represented to the Court in the Underlying Lawsuit that his claims were based on violations of statutes and he was only seeking statutory damages under the SC UCC based on First Financial's alleged noncompliance with statutory provisions. *See* Exhibit C. He now contends the Underlying Lawsuit is about defamation and invasion of privacy.[6] [*See* D.E. #30]. This position is inconsistent with the prior position he represented in state court. Thus, the first requirement is satisfied.

Delaney does not assert a new legal theory in this action. Instead, he mischaracterizes the facts in the Underlying Lawsuit as facts supporting common law claims for defamation and invasion of privacy, rather than statutory violations. The facts underpinning the claims, despite Delaney's new attempts to reframe them, however, remain the same. First Financial allegedly sent him deficient pre- and post-sale notice letters in violation of the SC UCC. These are the only legal

---

[6] As noted, there are no actual causes of action for these claims and the only damages sought are statutory damages.

claims that have been asserted in the Underlying Lawsuit. As such, the second requirement of judicial estoppel is satisfied.

The Court in the Underlying Lawsuit granted class certification based on Delaney's representations, in part, that class certification was appropriate because there is commonality and typicality with regard to the claims in the suit for statutory violations and damages. *See* Exhibit B. The Court accepted this position as represented in the Court's Order granting Delaney's motion. *See id*. Thus, Delaney made representations in state court to achieve the goal of class certification and now takes a different position to achieve an unfair advantage—coverage that does not exist for his statutory claims and damages. As such, the third requirement of judicial estoppel is satisfied.

Significantly, if Delaney was truly asserting claims for damages for defamation and invasion of privacy on behalf of the class in the Underlying Lawsuit, he would have sought class certification for those claims—he did not, likely because they require individualized proof and damages, potentially defeating the requirements for class certification. He advances this position now to intentionally mislead the Court about the nature of the Underlying Lawsuit in an effort to create coverage where it does not exist. As such, the fourth requirement for judicial estoppel is satisfied.

Simply put, in state court Delaney described his damages one way (uniform statutory damages) but in this declaratory judgment action he describes the lawsuit as, among other things, one seeking damages which are inherently individualized. He has profited from this inconsistency by obtaining class certification in state court. The purpose of judicial estoppel is to protect the integrity of the judicial system. *Kiawah Island Util., Inc.*, at *3. If parties are allowed to change positions as to the facts of the case, the truth-seeking function of the judicial process is undermined. Application of the doctrine deters parties from playing "fast and loose" with the facts of a case

adversely impacting the judicial system. *Id.* Therefore, Delaney should be judicially estopped from advancing his inconsistent position and his motion for partial judgment on the pleadings should be denied.

**II.     Even if Delaney is not judicially estopped from advancing his new position, the claims against First Financial in the Underlying Lawsuit are not covered under the Policy and, therefore, State Farm has no duty to defend or indemnify First Financial in the Underlying Lawsuit.**

The Policy's insuring agreements for business liability coverage provide, in relevant part, as follows:

**COVERAGE L – BUSINESS LIABILITY (Form FP-6103)[7]**

We will pay those sums that the insured becomes legally obligated to pay as damages because of **bodily injury, property damage, personal injury** or **advertising injury** to which this insurance applies…. This insurance applies only:

1.   to **bodily injury** or **property damage** caused by an occurrence which takes place in the **coverage territory** during the policy period;

2.   to **personal injury** caused by an occurrence committed in the **coverage territory** during the policy period. The occurrence must arise out of the conduct of your business, excluding advertising, publishing, broadcasting or telecasting done by you or for you.

**Coverage L – Business Liability (Form CMP-4100)[8]**

When a Limit Of Insurance is shown in the Declarations for **Coverage L – Business Liability**, we will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies.

* * *

**2.**     This insurance applies:

　　**a.**     To "bodily injury" and "property damage" only if:

---

[7] This policy form was in place from January 9, 2008 – January 9, 2012.
[8] This policy form has been in place since January 9, 2012 and remains in effect.

>     **(1)**     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>
>     **(2)**     The "bodily injury" or "property damage" occurs during the policy period; and
>
>     * * *
>
> **b.**     To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

* * *

[*See* D.E. ##1-1 – 1-14].

Under the business liability coverage of the Policy, coverage is afforded for two types of claims: (1) damages because "bodily injury" and "property damage" caused by an "occurrence" and (2) damages because of "personal injury" or "advertising injury" caused by an "occurrence" arising out of the insured's business or, beginning January 9, 2012, "personal and advertising injury" caused by an offense arising out of the insured's business. [*See id.*]. Thus, there is no coverage under the Policy for damages because of "bodily injury," "property damage," "personal injury" or "personal and advertising injury" unless they are caused by an "occurrence" or offense as defined in the Policy. [*See id*].

The Policy defines "occurrence" as an accident, including continuous or repeated exposure to harmful conditions. [*See id.*]. In South Carolina, an "accident" is defined as "an effect which the actor did not intend to produce and cannot be charged with the design of producing." *Goethe v. New York Life Ins. Co.*, 190 S.E. 451, 458 (S.C. 1937). It has further been defined as an unintended and unexpected injurious happening, *Baker v. American Insurance Co. of Newark, N.J.*, 324 F. 2d 748, 750 (4th Cir. 1963), and "an unexpected happening or event, which occurs by chance and usually suddenly, with harmful result, not intended or designed by the person suffering

the harm or hurt." *Auto Owners Ins. Co. v. Newman*, 684 S.E.2d 541, 543 (S.C. 2009), *holding modified by Ex parte Builders Mut. Ins. Co.*, 847 S.E.2d 87 (S.C. 2020) (internal quotations omitted).

In the amended complaint, Delaney asserts two claims against First Financial: (1) SC UCC Presale Notice Violations of §§36-9-611 and 9-614; and (2) SC UCC Post-sale Notice Violations of §36-9-616. [D.E. #1-15, ¶¶77-78 and 80-82]. These claims arise out of First Financial's allegedly deficient notice letters to Delaney regarding the disposition or sale of his vehicle. They do not constitute an "occurrence" under the Policy because First Financial did not accidentally draft and mail the notice letters. Instead, First Financial intentionally sent these notice letters to Delaney and others. Moreover, Delaney claims First Financial's "failure to provide statutorily compliant post-sale notice is part of a pattern, or consistent with a practice, of noncompliance." [D.E. #1-15, ¶30]. This conduct does not constitute an "unintended and unexpected injurious happening" or "unexpected happening or event, which occurs by chance and usually suddenly." *See Baker*, 324 F.2d at 750; *see also Auto Owners Ins. Co.*, 684 S.E.2d at 543. As such, Delaney's claims against First Financial are not for accidental conduct and, therefore, are not "occurrences" as defined in the Policy.

Even if the claims against First Financial are "occurrences," which is denied, coverage is only afforded for damages because of "bodily injury," "property damage," "personal injury" or "personal and advertising injury." [*See* D.E. ##1-1 – 1-14]. "Bodily injury" is defined as bodily injury, sickness or disease and "property damage" is defined as physical damage to or destruction of tangible property, including loss of use of such property, and loss of use of tangible property that is not physically injured or destroyed, provided that such loss of use is caused by physical injury to or destruction of tangible property. [*See id*.]. "Personal injury" is defined as injury, other

than "bodily injury," arising out of one or more of the following offenses: (a) false arrest, detention or imprisonment; (b) malicious prosecution; (c) wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, by or on behalf of its owner, landlord or lessor; (d) oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or (e) oral or written publication, in any manner, of material that violates a person's right of privacy. [*See id*]. "Personal and advertising injury" is defined similarly. [*See id*.].

As noted above, the terms "bodily injury," "property damage," "personal injury" and "personal and advertising injury" are expressly defined in the Policy. None of the definitions, however, include statutory damages. Unless the Policy includes statutory damages within the definitions, as a matter of law, statutory damages do not constitute "bodily injury," "property damage," "personal injury" or "personal and advertising injury." This is consistent with the well-settled law that courts may not torture the language of the policy where it is clear and unambiguous. *See Diamond State*, 456 S.E.2d at 915.

Nonetheless, Delaney contends that his allegations of defamatory conduct and invasion of privacy trigger State Farm's duty to defend First Financial. While oral or written publications that defame a person or violate a person's right of privacy are enumerated offenses under the definitions of "personal injury" and "personal and advertising injury," only <u>injuries arising out of</u> such alleged conduct constitute "personal injury" or "personal and advertising injury." [*See* D.E. ##1-1 – 1-14].

South Carolina law is clear that the obligation of a liability insurance company to defend is determined by the allegations in the complaint. *See Collins Holding Corp.*, 666 S.E.2d at 899. South Carolina law is also clear that the relevant analysis for the Court is the totality of the allegations in the complaint and the alleged conduct that is the basis for the plaintiff's claims. *See*

*City of Hartsville*, 677 S.E.2d at 578-79; *see also Barrett*, 530 S.E.2d at 137. A party cannot invoke coverage by mischaracterizing its claims or couching uncovered claims as covered claims. *See Harvey*, 498 S.E.2d at 227.

Delaney is attempting to do just that—asking the Court to look at certain terms used in the amended complaint in a vacuum, without regard to the totality of the allegations, in an attempt to transmogrify First Financial's alleged statutory violations as common law claims for defamation and invasion of privacy.

Delaney does <u>not</u> assert claims against First Financial for defamation or invasion of privacy, nor does he seek damages arising out of such claims. [*See* D.E. #1-15]. As the plaintiff in the Underlying Lawsuit, Delaney controls the claims and damages pursued in the action. Here, he limited the amended complaint to assert claims for violations of the SC UCC and non-monetary relief. Nevertheless, he is now asking the Court to perform legal gymnastics to find coverage by converting statutory claims into common law tort claims. The amended complaint, however, does not support this conclusion.[9] In his prayer for relief, Delaney seeks (1) a declaration that the presale and post-sale notices failed to comport with the SC UCC, (2) injunctive relief enjoining First Financial from certain collection practices and compelling First Financial to remove any adverse credit information on consumer credit reports, (3) damages equal to the minimum damages <u>provided by §36-9-625(c)(2)</u> for Defendant's presale notice violations; and (4) <u>statutory damages</u> of $500 for each defective post-sale notice sent or that Defendant failed to send. [*See id*.].

---

[9] The amended complaint was filed on March 30, 2021, ten (10) years after the Underlying Lawsuit was originally filed. During that time, Delaney had ample time to select the claims and remedies he sought to pursue against First Financial. Delaney attempts to trigger coverage under the Policy by throwing the kitchen sink in the factual allegations. In doing so, however, he does not assert tort or other common law claims for damages against First Financial. Instead, he only asserts claims against First Financial for violations of the SC UCC and limits his remedies to statutory damages, injunctive relief, and declaratory relief.

Delaney seeks damages from First Financial under Section 36-9-625 for its alleged notice violations. *See id*. Section 36-9-625 explicitly provides remedies for a secured party's failure to comply with the SC UCC. *See* S.C. Code Ann. §36-9-625. It is well-settled that a plaintiff cannot maintain a common law cause of action when he has an existing statutory remedy. *Conner v. Nucor Corp.*, No. 2:14-CV-4145, 2015 WL 5785510, at *7 (D.S.C. Sept. 30, 2015); *Frazier v. Target Corp.*, No. CIV.A. 2:09-CV-01625, 2009 WL 3459221, at *2 (D.S.C. Oct. 27, 2009). Because Section 36-9-625 provides Delaney with a remedy for First Financial's alleged violations of the SC UCC, Delaney is limited to that remedy. *See id*.

Further, Delaney does not seek other monetary damages from First Financial in the Underlying Lawsuit. In fact, Delaney admitted in his memorandum in support of class certification that the only damages sought are statutory damages:

> Most of the relief sought by the class members is wholly uniform: statutory damages of $500 for each post[1]sale notice violation, injunctive relief (enjoining [First Financial] from collecting deficiency balances, time price differential, and delinquency and collection charges and compelling [First Financial] to have any adverse credit information it wrongfully reported removed from Class members' credit reports), and declarations that [First Financial's] presale and post-sale notices violated the law. The only relief sought by Delaney and the Class that is not strictly uniform is statutory damages under § 36-9-625(c)(2).

Exhibit C, p. 27 (emphasis added). The Court in the Underlying Lawsuit also recognized (by citing Delaney's own memorandum) that other than his request for injunctive and declaratory relief, Delaney "seeks statutory damages as provided by S.C. Code Ann. §36-9- 635(c)(2)," which "provides a formula for damages for noncompliance with S.C. Code Ann. § 36-9-611 and § 36-9-614.4." *See* Exhibit B, p. 8 (emphasis added). Statutory damages are not covered damages under liability policies. *See e.g., Liberty Mut. Fire Ins. Co. v. Gen. Info. Servs., Inc.*, 22 F. Supp. 3d 597, 602 (E.D. Va. 2014); *Builders Mut. Ins. Co. v. Donald A. Gardner Architects, Inc.*, 856 F. Supp. 2d 773, 777 (D.S.C. 2012).

In *Liberty Mut. Fire Ins. Co.*, the court, applying South Carolina law, specifically stated the plaintiff's claims for violations of the Fair Credit Reporting Act sought statutory damages, not actual damages, and statutory damages "are not encompassed within the coverage term 'personal and advertising injury.'" 22 F. Supp. 3d at 602. The same holds true here. The damages Delaney seeks are purely statutory and based on First Financial's alleged violations of the SC UCC. They are not damages because of (1) "bodily injury," (2) "property damage," (3) "personal injury" or (4) "personal and advertising injury." Thus, the Policy does <u>not</u> cover the claims against First Financial in the Underlying Lawsuit.

Moreover, claims for non-monetary relief, such as Delaney's claims for declaratory judgment and injunctive relief, are not claims for "bodily injury," "property damage," "personal injury" or "personal and advertising injury" as defined in the Policy. In *Prince George Par. of Prince George Winyah v. GuideOne Mut. Ins. Co.*, the court held the underlying plaintiff's claims for injunctive relief, cancellation of registered trademarks, and declaratory relief (all arising out of infringement on its trademark and false advertising) were not covered because such claims were for equitable and non-monetary relief, not damages as defined in the policy. No. 2:19-CV-1302-RMG, 2019 WL 7461662, at *4 (D.S.C. Nov. 26, 2019), *aff'd*, 839 F. App'x 779 (4th Cir. 2020), and *aff'd*, 839 F. App'x 779 (4th Cir. 2020). Likewise, Delaney's requests for injunctive and declaratory relief are not claims for covered damages under the Policy.

For the foregoing reasons, Delaney's motion should be denied and State Farm is entitled to a declaration that it has no duty to defend or indemnify First Financial in the Underlying Lawsuit, as well as judgment in its favor on Delaney's and First Financial's declaratory judgment counterclaims.

III. **Delaney's motion for partial judgment on the pleadings should be denied because there is a question of fact regarding whether State Farm was substantially prejudiced by First Financial's breach of the Policy's notice clause.[10]**

As a condition of coverage, Section II – General Conditions of the Policy provides First Financial must promptly notify State Farm of a claim and provide it with any suit papers once received. [*See* D.E. ##1-1 – 1-14]. In South Carolina, insurers can invoke notices clauses to deny coverage if they are substantially prejudiced by the insured's failure to comply. *See Neumayer v. Philadelphia Indem. Ins. Co.*, 831 S.E.2d 406, 411–12 (S.C. 2019); *see also Selective Ins. Co. of Am. v. Wacha*, No. 4:18-CV-00468-RBH, 2019 WL 2358949, at *5 (D.S.C. June 4, 2019).

It is undisputed the Underlying Lawsuit was originally filed on October 4, 2011. [D.E. #1, ¶11] [D.E. #8, ¶11] [D.E. #16-1, ¶11]. In the original complaint, Delaney asserted substantially the same claims against First Financial that it asserts in the amended complaint—claims for violations of the SC UCC based on deficient notices. A copy of the complaint in the Underlying Lawsuit is attached hereto as **Exhibit D**. As a result of these violations, Delaney sought injunctive relief, declaratory relief, and statutory damages pursuant to Section 36-9-625(c)(2) of the SC UCC. *See* Exhibit C. As noted, the amended complaint filed on March 30, 2021 seeks the same relief and damages from First Financial. [*See* D.E. #1-15].

First Financial, however, did not provide State Farm with notice of the Underlying Lawsuit until April 2021, nearly ten (10) years after suit was filed. [D.E. #1, ¶13] [D.E. #8, ¶13] [D.E. #16-1, ¶13]. During the years leading up to State Farm's first notice, the case was dismissed, appealed, and, eventually, in May 2019, the South Carolina Supreme Court reversed the dismissal and

---

[10] State Farm is entitled to a declaration that it has no duty to defend or indemnify First Financial in the Underlying Lawsuit because there is no coverage under the Policy for the reasons discussed above. First Financial's breach of the Policy's notice clause is only at issue if the Court determines the claims in the Underlying Lawsuit trigger coverage under the Policy, which is denied.

remanded the case. Because it was not given notice of the Underlying Lawsuit until April 2021, nearly ten (10) years after suit was filed and two (2) years after it was remanded by the South Carolina Supreme Court, State Farm did not have the opportunity to participate in the defense or investigate the claims against First Financial. As such, State Farm was substantially prejudiced by the late notice.

The original complaint, like the amended complaint, does not assert covered claims for damages. Therefore, whether First Financial complied with the Policy's notice condition is irrelevant. If, however, the claims are covered, which is denied, State Farm was substantially prejudiced by First Financial's late notice of the Underlying Lawsuit as a matter of law. As such, State Farm is entitled to a declaration that First Financial breached the Policy's notice clause such that it has no duty to defend or indemnify First Financial. At the very least, if the Court determines the claims in the Underlying Lawsuit are covered under the Policy, the issue of substantial prejudice is a question of fact; that alone provides sufficient grounds to preclude Delaney's motion for partial judgment on the pleadings. *See e.g., Magneti Marelli Powertrain USA LLC v. Pierburg, Inc.*, No. 08-CV-670-GRA, 2008 WL 11463530, at *4 (D.S.C. July 9, 2008) (finding particular questions of fact precluded entry of judgment on the pleadings for the defendants).

## IV.  State Farm's reservation of rights letters are not concessions that the allegations in the Underlying Lawsuit trigger a duty to defend First Financial.

Contrary to Delaney's contention, State Farm's decision to defend First Financial under a reservation of rights does not prevent it from asserting its coverage position and seeking a declaration from this Court on its duties of defense and indemnification. In South Carolina, an insurer is <u>required</u> to give its insured notice if it intends to assert defenses to coverage or to pursue declaratory relief at a later date to avoid breaching its duty to defend and suspend the operation of the doctrines of waiver and estoppel. *See Harleysville Grp. Ins. v. Heritage Communities, Inc.*,

21

803 S.E.2d 288, 297 (S.C. 2017). State Farm did exactly what it was required to do—it agreed to defend First Financial under a reservation of rights while it continued to investigate coverage for the Underlying Lawsuit. To punish State Farm for doing the very thing it is obligated to do would fundamentally change the framework of insurance law in South Carolina and have a chilling effect on the benefits provided to insureds (i.e., a defense) while insurers investigate coverage.

Further, Delaney's sole reliance on State Farm's August 19, 2021 reservation of rights letter is misplaced. State Farm issued a supplemental reservation of rights letter to First Financial on June 7, 2022. Both reservation of rights letters quote the policy provisions at issue in this declaratory judgment action, analyze the allegations in the Underlying Lawsuit, and ultimately provide that the allegations may or may not trigger coverage under the Policy. [D.E. #6-1] [Exhibit A]. The reservations do not, at any time, state coverage "is" provided. [*See id.*].

They also provide that State Farm will defend First Financial subject to a full and complete reservation of its rights under the Policy, including its right to "file suit and seek a judicial declaration that no coverage and/or defense is provided under the policy at issue to First Financial." [*See id.* (emphasis added)]. As such, the reservation of rights letters fairly placed First Financial on notice that it may seek a declaration from the Court regarding its duties of both defense and indemnification. In addition, they affirmatively state that State Farm is not waiving any of its rights or defenses under the Policy. [*See id.*].

South Carolina courts have repeatedly and explicitly held that waiver and estoppel cannot create coverage and bring into existence something not covered in the policy. *Liberty Mut. Ins. Co. v. Westport Ins. Corp.*, 664 F. Supp. 2d 587, 594 (D.S.C. 2009) (citing *Laidlaw Env't Servs. (TOC), Inc. v. Aetna Cas. & Sur. Co. of Illinois*, 524 S.E.2d 847, 852 (S.C. Ct. App. 1999)); *USAA Gen. Indem. Co. v. Pelichet*, No. 8:19-CV-1610-TMC, 2021 WL 9100390, at *4 (D.S.C. Dec. 9, 2021).

"[C]overage under an insurance policy cannot be created or enlarged by waiver or estoppel and, if there is no ambiguity, it is the duty of the court to enforce the policy as written." *Integon Nat'l Ins. Co. v. Gomez*, No. 2:19-CV-02958-DCN, 2020 WL 6709972, at *4 (D.S.C. Apr. 21, 2020). The Policy is clear and unambiguous. It does not provide coverage for the claims and damages Delaney asserts in the Underlying Lawsuit. Delaney's attempt to create coverage through the reservation of rights letters is not supported under South Carolina law.

**V.      If the Court determines State Farm has a duty to defend, this declaratory judgment action should be stayed until the Underlying Lawsuit is completed, not dismissed.**

To the extent the allegations against First Financial in the Underlying Lawsuit trigger State Farm's duty to defend, the duty to defend is not dispositive of State Farm's duty to indemnify. "If an insurer has no duty to defend, it necessarily has no duty to indemnify, but if it does have a duty to defend, the court may be unable to determine whether the insurer has a duty to indemnify until the resolution of the underlying action." *See Canopius US Ins., Inc. v. Middleton*, 202 F. Supp. 3d 540, 546 (D.S.C. 2016). To the extent the Court determines State Farm has a duty to defend First Financial in the Underlying Lawsuit, this declaratory judgment action should be stayed until the resolution of the Underlying Lawsuit to determine if State Farm has a duty to indemnify First Financial for the damages awarded against it, if any. *See e.g., Am. S. Ins. Co. v. Moras Roofing, LLC*, No. 2:09–cv–1966, 2010 WL 2710588, at *3 (D.S.C. July 7, 2010).

<u>CONCLUSION</u>

Based on the foregoing, State Farm respectfully requests the Court deny Delaney's motion for partial judgment on the pleadings. State Farm further requests that the Court declare it has no duty to defend or indemnify First Financial in the Underlying Lawsuit and enter judgment in its favor on Delaney's and First Financial's counterclaims for declaratory judgment. To the extent the Court determines State Farm has a duty to defend First Financial in the Underlying Lawsuit, State

Farm respectfully requests that this action be stayed, not dismissed, until the Underlying Lawsuit

is resolved and the duty to indemnify is ripe for this Court's review.

                                        s/Jennifer E. Johnsen
                                        Jennifer E. Johnsen (Fed. Bar No. 5427)
                                        Natalie Ecker (Fed. Bar No. 12931)
                                        GALLIVAN, WHITE & BOYD, P.A.
                                        P.O. Box 10589
                                        Greenville, SC  29603
                                        (864) 271-9580

                                        AND

                                        Robert W. Whelan (Fed. Bar No. 9242)
                                        Charles R. Norris (Fed. Bar No. 2549)
                                        WHELAN MELLEN & NORRIS, LLC
                                        89 Broad Street
                                        Charleston, SC 29401
                                        (843) 998-7099

                                        Attorneys for Plaintiff,
October 30, 2023                        State Farm Fire and Casualty Company