# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| State Farm Fire and Casualty Company, ) | Civil Action No. 2:23-263-RMG |
| ) | |
| *Plaintiff*, ) | |
| ) | **ORDER AND OPINION** |
| v. ) | |
| ) | |
| First Financial of Charleston, Inc., *et al.*, ) | |
| ) | |
| *Defendants*. ) | |

Before the Court are Defendant Otha Delaney and Plaintiff State Farm Fire and Casualty Company ("Insurer")'s respective motions for judgment on the pleadings. (Dkt. No. 30); (Dkt. Nos. 31, 39). Defendant First Financial of Charleston ("FFC" or "Insured") supports Delaney's motion and opposes Insurer's motion. (Dkt. Nos. 33, 36). Insurer opposes Delaney's motion. (Dkt. Nos. 32, 34). Delaney opposes Insurer's motion. (Dkt. No. 35). For the reasons set forth below, the Court rules as follows.

**I.     Background**

Insurer brings this declaratory judgment action to determine whether it must defend and indemnify FFC in a pending class action lawsuit Delaney brings against FFC in South Carolina state court. (Dkt. No. 1). Delaney brings a counterclaim for declaratory judgment that Insurer's policies with FFC require Insurer defend and indemnify FFC with respect to his lawsuit. (Dkt. No. 6). FFC brings similar counterclaims against Insurer in addition to an insurance bad faith claim. (Dkt. No. 26).

In *Delaney v. First Financial of Charleston, Inc.* (the "Underlying Action"), Delaney alleges FFC repossessed and sold consumers' collateral without mailing them notices required by Article 9 of South Carolina's Uniform Commercial Code ("UCC"). (Dkt. No. 1-15). Delaney

alleges FFC mailed notices that failed to provide information required by law. (*Id.* at 6). Delaney alleges FFC did not know its presale and post-sale notices were "fals[e]." (*Id.* at 7) ("The defective presale and post-sale notices were not mailed with knowledge of their falsity. The reporting of false or inaccurate derogatory information on the class members' credit reports was not done with knowledge of its falsity."). Delaney alleges said acts "harmed the class members' credit worthiness, credit standing, credit capacity, character, and general reputation" and "invaded the Class's privacy rights." (*Id.*). Delaney alleges the defective notices and the reporting of "false or inaccurate derogatory information on the class members' credit reports" "slandere[d] or libel[ed] the class members." (*Id.*). Delaney brings two claims against FFC under the UCC.

Insurer issued FFC policy 99-CV-4371-3 for the period January 9, 2008 to January 9, 2009 and then renewed the policy (collectively, the "Policies") annually through January 9, 2022. (Dkt. No. 30 at 5); (Dkt. Nos. 1-1 through 1-14) (copies of the Policies). The Policies provide:

**COVERAGE L – BUSINESS LIABILITY (Form FP-6103)**[1]

We will pay those sums that the insured becomes legally obligated to pay as damages because of **bodily injury, property damage, personal injury** or **advertising injury** to which this insurance applies…. This insurance applies only:

1. to **bodily injury** or **property damage** caused by an occurrence which takes place in the **coverage territory** during the policy period;

2. to **personal injury** caused by an occurrence committed in the **coverage territory** during the policy period. The occurrence must arise out of the conduct of your business, excluding advertising, publishing, broadcasting or telecasting done by you or for you.

3. to **advertising injury** caused by an occurrence committed in the **coverage territory** during the policy period. The occurrence must be committed in the course of advertising your goods, products or services.

---

[1] This policy form was in place from January 9, 2008 – January 9, 2012. (Dkt. No. 31-1 at 13 n.7); *see, e.g.*, (Dkt. No. 1-1 at 38).

> **Coverage L – Business Liability (Form CMP-4100)**[2]
>
> When a Limit Of Insurance is shown in the Declarations for **Coverage L – Business Liability**, we will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies.
>
> . . .
>
> 2. This insurance applies:
>
> a. To "bodily injury" and "property damage" only if
>
> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>
> (2) The "bodily injury" or "property damage" occurs during the policy period; and
>
> . . .
>
> b. To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

(Dkt. No. 32 at 13-14).

The Policies define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *See, e.g.* (Dkt. No. 1-1 at 50); (Dkt. No. 1-10 at 73) (same).

The Policies which include Form FP-6103 define "personal injury" to include "oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services" or "oral or written publication, in any manner, of material that violates a person's right of privacy." *See, e.g.*, (Dkt. No. 1-1 at 17). The Policies which include Form CMP-4100 define "personal and advertising injury" to mean

---

[2] This policy form has been in place since January 9, 2012. (Dkt. No. 31-1 at 13 n.8).

"injury, including consequential 'bodily injury,' arising out of one or more of the following offenses: . . . d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages, a person's or organization's goods, products or services; e. Oral or written publication, in any manner, of material that violates a person's right of privacy." *See, e.g.*, (Dkt. No. 1-8 at 72).

The parties' respective motions are fully briefed and ripe for disposition.

## II.     Legal Standard

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  A judgment on the pleadings is only warranted if "the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." *Lewis v. Excel Mech., LLC*, 2:13-CV-281-PMD, 2013 WL 4585873, at * 2 (D.S.C. Aug. 28, 2013).  The court's review is therefore limited to the pleadings, *Abell Co. v. Balt. Typographical Union No. 12*, 338 F.2d 190, 193 (4th Cir. 1964), and to "any documents and exhibits attached to and incorporated into the pleadings," *Lewis*, 2013 WL 4585873, at *1.  The pleadings on a Rule 12(c) motion should be construed in a light most favorable to the non-movants. *Burbach Broad. Co. v. Elkins Radio Corp.*, 278 F.3d 401, 405–06 (4th Cir. 2002).  Therefore, the "court must accept all well pleaded factual allegations in the non-moving party's pleadings as true and reject all contravening assertions in the moving party's pleadings as false." *Lewis*, 2013 WL 4585873, at *2 (internal quotations omitted).

## III.    Discussion

The rules of insurance contract interpretation under South Carolina law are well-settled. At bottom, "[t]he question resolves itself [] simply into whether, on the issue of the extent of coverage, there is ambiguity." *Robbins v. Selective Ins. Co. of Am.*, No. CV 2:17-0574-RMG, 2018 WL 8693730, at *2 (D.S.C. Oct. 26, 2018) (citing *Tobin v. Beneficial Standard Life Ins. Co.*, 675

F.2d 606, 608 (4th Cir. 1982)). "Courts must enforce, not write, contracts of insurance and their language must be given its plain, ordinary and popular meaning." *Tobin*, 675 F.2d at 608. "An insurance policy's terms must be construed most liberally in favor of the insured, and if the language is ambiguous, or capable of two reasonable interpretations, the construction most favorable to the insured should be adopted." *Id.* But "in construing an insurance contract, all . . . provisions should be considered, and one may not, by pointing out a single sentence or clause, create an ambiguity" where there is none. *Catlin Specialty Ins. Co. v. McPherson,* No. 2:12-cv-2785, 2013 U.S. Dist. LEXIS 106993, at *7-8 (D.S.C. July 31, 2013) (citing *Yarborough v. Phoenix Mut. Life Ins. Co.*, 266 S.C. 584, 225 S.E.2d 344, 348 (S.C. 1976)).

With the above in mind, the Court addresses Insurer's argument that the harm Delaney alleges in the Underlying Action does not constitute an "occurrence" under the Policies. (Dkt. No. 31-1 at 14); (Dkt. No. 32 at 14-15). Neither Delaney nor FFC address this argument. (Dkt. Nos. 33, 36); *see also Kinetic Concepts, Inc. v. Convatec Inc.*, No. 1:08cv918, 2010 WL 1667285, at *8 (M.D.N.C. Apr. 23, 2010) (noting courts have repeatedly recognized that "a party who fails to address an issue has conceded the issue" and collecting cases).

As noted before, the Policies define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *See, e.g.* (Dkt. No. 1-1 at 50); (Dkt. No. 1-10 at 73); *see also Auto Owners Ins. Co., Inc. v. Newman*, 385 S.C. 187, 192 (2009) (noting that in the absence of a definition, the court defines "accident" as an "unexpected happening or event, which occurs by chance and usually suddenly, with harmful result, not intended or designed by the person suffering the harm or hurt").

*CRC Scrap Metal Recycling, LLC v. Hartford Cas. Ins. Co.*, No. CA 7:12-146-HMH, 2012 WL 4903661, at *4 (D.S.C. Oct. 15, 2012), *aff'd*, 531 F. App'x 333 (4th Cir. 2013) is instructive.

In that case, this Court held that negligent conversion was not covered conduct under an insurance policy that defined "occurrence" identically as the Policies. *Id.* at *5 ("To the extent the Action Concrete case alleges negligent or innocent conversion, the court finds that it does not qualify as an occurrence under the Policy because negligent or innocent conversion is not an accident."); *Id.* at *3 (noting "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions"). *CRC* relied on, *inter alia*, *Red Ball Leasing, Inc. v. Hartford Accident and Indemnity Co.*, 915 F.2d 306, 309 (7th Cir.1990), to support its holding.

In *Red Ball Leasing*, the Seventh Circuit concluded that there was no occurrence under the policy at issue in a case where a company repossessed certain vehicles in error. The court noted that

> [t]here is no doubt that Red Ball intended to repossess the trucks; that action clearly was not an accident. However, Red Ball asserts that the conversion was accidental, because Red Ball believed that it had a right to repossess the trucks. This argument relies on a reading of the policy that would allow coverage when the insured volitionally commits an act, but the decision to commit the act is based on erroneous or mistaken information.

*Id.* Further, the Seventh Circuit explained that

> [a] volitional act does not become an accident simply because the insured's negligence prompted the act. Injury that is caused directly by negligence must be distinguished from injury that is caused by a deliberate and contemplated act initiated at least in part by the actor's negligence at some earlier point. The former injury may be an accident.

*Id.* at 311. Thus, "the decision to take the trucks—an intentional act of Red Ball—is not an 'accident' under the terms of the insurance policy. Therefore, we conclude that the injury was not covered by the property damage provision of the insurance contract." *Id.*; *Adams v. Unione*

*Mediterranea Di Sicurta,* 220 F.3d 659, 678 (5th Cir.2000) (finding that negligent conversion "was not an accident or a fortuitous event").

Here, in the Underlying Action, Delaney alleges that FFC intentionally sent notices which it did not know contained false information or did not know were defective under South Carolina law. Under the above-described case law, FFC's sending presale and post-sale notice was a deliberate act and cannot be considered an accident.

Accordingly, as to the Policies governed by Form FP-6103, the acts the Underlying Action challenges are not covered and the Court **grants** Insurer judgment on the pleadings on this specific point. *See, e.g.*, (Dkt. No. 1-1 at 17, 38) (noting "advertising injury" occurrences must be committed in the "course of advertising your goods, products or services" and limiting "personal injury" claims to an "**occurrence** committed in the **coverage territory**") (first emphasis added); *Red Ball Leasing*, 915 F.2d at 309 (rejecting a reading of the policy "that would allow coverage when the insured voluntarily commits an act, but the decision to commit the act is based on erroneous or mistaken information"); *CRC Scrap Metal Recycling, LLC*, 2012 WL 4903661, at *5-6 (same—noting that "[e]ven if CRC did not know that the forms were stolen, CRC intentionally purchased the forms and then intentionally sold the forms"); (Dkt. No. 1-15 at 6-7) (alleging that FFC sent defective presale and post-sale notices without knowledge "of their falsity").

As to Policies governed by Form CMP-4100, however, which provide coverage for "offenses" constituting "personal and advertising injuries," the Court analyzes the allegations in the Underlying Action to determine whether it can declare—at this time—that Insurer does or does not have a duty to defend FFC in the Underlying Action.

As noted previously, in the Underlying Action, Delaney alleges that FFC's presale and post-sale notices did not comply with applicable South Carolina law. (Dkt. No. 1-15 at 6-7). Delaney does not bring causes of action for defamation, libel, or invasion of privacy. *See generally* (Dkt. No. 1-15). Instead, he brings claims for "SC UCC Presale Notice Violations" and "SC UCC Post-sale Notice Violations" and seeks statutory damages. (*Id.* at 11-13). Delaney does allege, however, that the "reporting of false or inaccurate derogatory information on the class members' credit reports harmed the class members' credit worthiness, credit standing, credit capacity, character, and general reputation" and the reporting of such "false or inaccurate derogatory information on the class members' credit reports . . . defame[d], slander[ed] or libel[ed] the class members." (*Id.* at 7).

Insurer's argument against finding a duty to defend "boils down to one main point: Delaney is not seeking damages for defamation or invasion or privacy. The State Farm policies only obligate State Farm to defend [FFC] against suits seeking covered damages." (Dkt. No. 39 at 4). Insurer relatedly argues that Delaney's motion for judgment on the pleadings should be denied because a question of material fact exists as to whether FFC's nearly 10-year delay in providing notice of Delaney's lawsuit to Insurer constitutes prejudice sufficient to deny FFC coverage. *Dan Ryan Builders W. Virginia, LLC v. Main St. Am. Assurance Co.*, 452 F. Supp. 3d 327, 336 (D.S.C. 2020) ("For an insurer to deny coverage based on an insured's failure to provide notice of a claim, the insurer has the burden to show that the failure to notify caused 'substantial prejudice' to the insurer's rights."); (Dkt. No. 31-1 at 20) (noting FFC "did not provide [Insurer] with notice of the Underlying Lawsuit until April 2021, nearly ten (10) years after suit was filed"). Delaney, for his part, argues the alleged acts are covered by the Policies. (Dkt. No. 30 at 9).

In interpreting the language of the policy, the "rules of construction require clauses of exclusion to be narrowly interpreted, and clauses of inclusion to be broadly construed." *McPherson v. Michigan Mut. Ins. Co.,* 310 S.C. 316, 320 (S.C.1993) (citing *Buddin v. Nationwide Mut. Ins. Co.,* 157 S.E.2d 633, 635 (S.C. 1967)). Furthermore, "[w]here the words of a policy are capable of two reasonable interpretations, that construction will be adopted which is most favorable to the insured." *Id.* (citing *Pitts v. Glenn Falls Indem. Co.,* 222 S.C. 133 (S.C.1974)).

In *McPherson,* the South Carolina Supreme Court discussed the appropriate interpretation for the phrase "arising out of" in an insurance policy. 310 S.C. at 319. The Court held that, in interpreting the "arising out of" language, "rules of construction require clauses of exclusion to be narrowly interpreted, and clauses of inclusion to be broadly construed." *Id.* Here, the Court must interpret the "arising out of" language broadly since it appears in a clause of inclusion. *See State Farm Fire & Cas. Co. v. Glasson*, No. 2:09-CV-2305-RMG, 2012 WL 12981729, at *6 (D.S.C. Jan. 17, 2012). In *McPherson,* the South Carolina Supreme Court cited the First Circuit decision of *Murdock v. Dinsmoor,* 892 F.2d 7 (1st Cir. 1989) as an example of a case where the court interpreted the "arising out of" language broadly. In *Murdock,* the First Circuit interpreted the phrase "arising out of" in the context of an insurance policy to mean "originating from," "growing out of," "flowing from," "incident to," or "having connection with." *Murdock,* 892 F.2d at 8.

With the above in mind, the Court finds that while a colorable argument exists the Policies containing Form CMP-4100 could provide coverage for the Underlying Action, *see Alltru Fed. Credit Union v. Starnet Ins. Co.*, 631 F. Supp. 3d 741, 751 (E.D. Mo. 2022) (denying insurer's motion to dismiss because "Electronic Publishing Liability" provision "potential[ly]" covered issuance of noncompliant UCC notices "pertaining to repossessed collateral for consumer loans" where class members alleged reporting of "false and derogatory credit information related to the

repossessions to consumer credit reporting agencies"), a question of material fact exists as to whether FFC's 10-year delay in tendering Delaney's claim to Insurer caused Insurer substantial prejudice.

Accordingly, Insurer's motion for judgment on the pleading must be **DENIED** as to Policies containing Form CMP-4100. Delaney's motion for judgment on the pleadings is likewise **DENIED**.

### IV.     Conclusion

For the reasons set forth above, the Court **DENIES** Delaney's motion for judgment on the pleadings (Dkt. No. 30) and **GRANTS** Insurer's motion for judgment on the pleadings (Dkt. No. 31) *only* as to those Policies containing Form SP-6103—Insurer's motion for judgment on the pleadings is otherwise **DENIED**.

Within the next ten business days, all parties are furthered **ORDERED** to provide the Court a joint status report describing their respective positions as to whether this action should be stayed or dismissed without prejudice with leave to refile pending resolution of the Underlying Action.

**AND IT IS SO ORDERED.**

s/Richard M. Gergel
Richard Mark Gergel
United States District Court Judge

December 21, 2023
Charleston, South Carolina